COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPREME JUDICIAL COURT
FOR SUFFOLK COUNTY
DOCKET NO. BD-2020-028

IN RE: RICHARD WILLIAM GANNETT

CORRECTED MEMORANDUM OF DECISION

In the underlying proceeding, the Board of Bar Overseers (board) adopted the recommendation of the hearing committee (committee) and voted to disbar Attorney Richard William Gannett. The respondent appeals the board's vote, contending that he was denied procedural due process due to his counsel's errors throughout the proceedings; that the committee erred in finding that he intentionally had misused third-party funds; and that the aggravating factors found by the committee were not supported by the evidence. After hearing and a review of the parties' submissions, and for the reasons set forth below, the respondent's appeal is denied.

Background. The facts, drawn from the amended petition for discipline and the parties' briefs, indicate the following. On October 31, 2012, Lee Bank lent $115,000 to Amaral Enterprises, LLC (Amaral), in the form of a five-year adjustable term note secured by a first mortgage on certain commercial property owned by Amaral. That same day, Lee Bank lent $70,000 to Bearbones, a company that operates a bakery on the property; this loan was secured by a second mortgage on the same property and guaranteed by Amaral. The property was insured by Peerless Indemnity Insurance Company (Peerless). Lee Bank was not listed on the declarations page of the policy and the policy listed the mortgage holder as "none;" however, Peerless was aware that Lee Bank was indeed a mortgage holder.

On February 19, 2013, Amaral suffered an insured loss caused by water damage to the equipment and the real property, causing a cessation in business. Shortly thereafter, Lee Bank alleged that the loans were in default. The respondent represented Amaral and Bearbones concerning the water damage.[1]

Thereafter, Lee Bank and Bearbones entered into a forbearance agreement, set to run from September 1 to December 31, 2013. The respondent drafted or participated in the drafting of the agreement. Between September 26, 2013, and June 30, 2015, the parties extended the forbearance agreement six times. The respondent reviewed these extensions. The last extension was executed on June 30, 2015, and covered the time period from July 1, 2015, to September 30, 2016. This extension carried over language from the previous forbearance agreements, stating: "Borrower shall immediately deliver to Lender [Lee Bank] future insurance proceeds relative to the Insurance Claim. Until the loans are re-paid to Lender's satisfaction, the Lender, in its sole and absolute discretion, shall determine how the money received from the Insurance Claim is distributed."

On August 4, 2015, an attorney representing Peerless mailed to the respondent a check in the amount of $42,227.28, representing insurance proceeds minus certain deductions and prior payments. The check was payable to the respondent (Gannett and Associates) and to Bearbones, Amaral, and Lee Bank. Peerless's attorney directed that Lee Bank be added as a payee of the check based on his review of the documents and his conclusion that Lee Bank likely was a loss payee under the terms of the amended insurance policy.

On August 6, 2015, an attorney representing Lee Bank sent a letter to the respondent stating that he was aware of the respondent's receipt of the check and that the respondent was not authorized to negotiate the check in any way on behalf of Lee Bank, including deposit to his

[1] The respondent's client operates both Amaral Enterprises, LLC, and Bearbones.

escrow account. The respondent received this letter. On August 7, 2015, Lee Bank's attorney

emailed the respondent, reiterating that he was not authorized to deposit the check into his

IOLTA account and stating that the forbearance agreement required that the insurance monies be

paid to Lee Bank and Lee Bank had the decision-making authority over the disbursements. The

respondent received this email.

On August 9, 2015, the respondent deposited the check into his IOLTA account. The

check was credited to his account on August 10, and the back of the check contained no

endorsement by Lee Bank. Between August 10, 2015, and June 1, 2016, the respondent wrote

nine checks from his IOLTA account debited from the deposit, payable to himself, totaling the

full amount of the deposit. The disbursements were for the payment of legal fees and other

expenses allegedly authorized by the respondent's client. Lee Bank did not authorize the deposit

of the check into the respondent's IOLTA account or any of the subsequent disbursements to him

from the proceeds of that check, and the funds have not been restored to his IOLTA account.

Bar counsel subsequently filed a petition for discipline against the respondent, alleging

that he held trust funds in his IOLTA account against which Lee Bank – a third party – had made

claims, and that he withdrew the funds and used them before the dispute about the funds was

resolved, in violation of Mass. R. Prof. C. 1.15 (b) (2) (ii).[2]  The respondent answered the

petition, arguing that he was following his client's instructions in depositing the check and that

---

[2] Mass. R. Prof. C. 1.15 (b) (2) (ii) provides: "Trust funds belonging in part to a client or
third person and in part currently or potentially to the lawyer shall be deposited in a trust
account, but the portion belonging to the lawyer must be withdrawn at the earliest reasonable
time after the lawyer's interest in that portion becomes fixed. A lawyer who knows that the right
of the lawyer or law firm to receive such portion is disputed shall not withdraw the funds until
the dispute is resolved. If the right of the lawyer or law firm to receive such portion is disputed
within a reasonable time after notice is given that the funds have been withdrawn, the disputed
portion must be restored to a trust account until the dispute is resolved" (emphasis added).

his client approved all of the disbursements made from the check. He also claimed that he had

an attorney's lien on the funds, as well as a claim under the Common Fund Doctrine.

After an evidentiary hearing, the hearing committee of the board (committee)

recommended that the respondent be disbarred. The respondent sought, and was granted, a

continuance to file an appeal, but failed to do so by the extended deadline. The board

preliminarily adopted the findings, conclusions, and recommendations of the committee and

voted to recommend disbarment. The respondent's subsequent request for a further continuance

was denied. Upon obtaining new counsel, the respondent moved to vacate the denial of his

motion for a continuance and the imposition of B.B.O. Rule 3.50(c).[3] The board allowed the

motion and the respondent filed an appeal. After oral argument, the board adopted the

committee's findings and conclusions and recommended disbarment. The instant appeal ensued.

Discussion. 1. Procedural due process. In his appeal before the board, the respondent

asserted that as a result of the ineffectiveness of his prior counsel he was deprived of his due

process rights. In particular, he alleged that his lawyer advised him against accepting bar

counsel's offer of presenting to the board a joint agreement in which the respondent would

stipulate to the violations and bar counsel would recommend a public reprimand as a sanction.

The respondent further alleged that counsel failed to advise the respondent of the risks of

proceeding to a hearing. With regard to the hearing itself, the respondent alleged that his counsel

agreed to all of bar counsel's proposed exhibits without consulting the respondent, and

inadequately prepared the respondent's client for his testimony, resulting in the witness becoming

confused and providing testimony adverse to the respondent. Finally, the respondent alleged that

---

[3] Pursuant to B.B.O. Rule 3.50(c), having failed to appeal the committee's report, the respondent was "deemed to have waived all objections to the findings, conclusions and recommendations of the hearing committee . . . and to have stipulated to the waiver of oral argument and submission of briefs."

his counsel did not inform him that he risked waiving all rights on appeal if he failed to file his appeal in a timely manner. The board rejected the respondent's due process argument, pointing out that "[t]here is no right to counsel in bar discipline proceedings and 'the constitutional right to counsel has not been applied to bar disciplinary matters as a matter of due process.'" Matter of Eisenhauer, 426 Mass. 448, 454 (1998), quoting Matter of Jones, 425 Mass. 1005, 1007 (1997). Accordingly, a respondent appealing an adverse bar discipline decision may not bring an ineffective assistance of counsel claim.[4] Id.

In his appeal of the board decision, the respondent repackages his due process argument as a denial of the opportunity "to be heard at a meaningful time and in a meaningful manner" prior to being disbarred. See Matter of Kenney, 399 Mass. 431, 435 (1987) (In bar discipline cases, "[t]he fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner"). However, as the respondent's argument, at bottom, remains rooted in the "actions and inactions" of his counsel, his due process claim fares no better here than it did before the board.[5]

2. Error in factual findings. The respondent also challenges certain findings made by the committee and adopted by the board regarding his handling of the funds. In particular, he asserts that it was error to find that he took the entire proceeds of the check, and to find that he was not credible with regard to portions of his testimony. I discern no error in the committee's findings.

_____

[4] With regard to the respondent's claim that he was not warned of the consequences of missing the appeal deadline, this argument is moot as the board later allowed him to file an appeal.

[5] In the instant appeal the respondent additionally raises three new arguments demonstrating his lack of opportunity to be heard at a meaningful time and in a meaningful manner: 1) due to certain of counsel's actions the board improperly assumed that the respondent was pro se, and was improperly influenced by that assumption; 2) counsel failed to properly prepare the respondent for the hearing; and 3) by the time the respondent filed his appeal, the board had already disbarred him. As these arguments were not raised below, they are waived. See Matter of Cobb, 21 Mass. Att'y Disc. R. 93, 122; 445 Mass. 452 (2005) (citations omitted).

"[T]he findings and recommendations of the board, though not binding on this court, are entitled to great weight." Matter of Hiss, 368 Mass. 447, 461 (1975). The court upholds "subsidiary facts found by the board 'if supported by substantial evidence, upon consideration of the record.'" Matter of Lupo, 447 Mass. 345, 356 (2006), quoting S.J.C. Rule 4:01, § 8 (6). Here the committee's findings that the respondent deposited the check into his IOLTA account are amply supported by the record. His IOLTA ledger and bank records, both entered as exhibits at the hearing, support this conclusion. Moreover, the respondent admitted in his answer that he paid himself the full amount of the check, and he testified at the hearing that he used the funds to pay his contingency fee and other legal fees and to reimburse himself for other bills.[6] The respondent also faulted the committee for failing to credit his testimony that Amaral authorized him to deposit the funds into his account. The committee is the "sole judge of the credibility of the testimony presented at the hearing." Matter of Saab, 406 Mass. 315, 328 (1989), quoting S.J.C. Rule 4:01, § 8 (3). The committee's credibility determinations will not be rejected unless it can be "'said with certainty' that the finding was 'wholly inconsistent with another implicit finding.'" Matter of Haese, 468 Mass. 1002, 1007 (2014), quoting Matter of Murray, 455 Mass. 872, 880 (2010). The respondent has not made such a showing. Amaral did not corroborate the respondent's testimony on this point; to the contrary, Amaral testified that he was not even aware that the respondent had taken the funds.

3. Appropriate Sanction. The respondent contends that rather than disbarment, the proper sanction is a suspension of six months. I begin by noting that this court affords "substantial deference" to the disciplinary sanction recommended by the board. Matter of Griffith, 440 Mass.

---

[6] The respondent appears to be under the impression that because he claims that he did not keep the full amount of the check, he should not have been found to have violated Mass. R. Prof. C. 1.15 (b) (2) (ii). He is mistaken. See Matter of Pemstein, 16 Mass. Att'y Disc. R. 339, 346 (2000).

500, 507 (2003).  Disbarment or indefinite suspension is the standard suspension for temporary

or permanent misappropriation of client funds.  Matter of Schoepfer, 426 Mass. 183, 187 (1997).

The same is true for third-party funds.  Matter of Hilson, 448 Mass. 603, 617-618 (2007).  As

discussed supra, the board did not err in finding that the respondent intentionally misused third-

party funds.

The respondent has not carried his "heavy burden" to demonstrate that "special mitigating

facts" justify a more lenient outcome.  See Matter of Schoepfer, 426 Mass. at 187.   In fact, the

committee referenced findings that constituted aggravating factors, namely that he lacked candor

before the committee and that he was motivated by greed and self-interest.[7]  See Matter of Lupo,

447 Mass. 345, 354 (2006); Matter of Eisenhauer. 426 Mass. 448, 455 (1998).   Thus, there is no

basis for reducing the sanction.

Conclusion.  The October 26, 2020 order of indefinite suspension is vacated.  A

judgment shall enter forthwith disbarring the respondent from the practice of law.

So ordered.

/s/ Kimberly S. Budd
Kimberly S. Budd
Associate Justice

Dated: November 3, 2020

A True Copy
Attest

11/6/2020     _____
Date          Assistant Clerk

---

[7] Although the respondent contests those findings, they are in fact supported by
substantial evidence.  See Matter of Lupo, 447 Mass. at 356 (we decline to provide "a point-by-
point rebuttal to the respondent's arguments [citation omitted]").