UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ) | |
| ) | |
| ) | |
| IN RE: RICHARD W. GANNETT   ) | MISC. BUS. DOCKET |
| ) | No. 1:20-mc-91636-FDS |
| ) | |
| ) | |

**RESPONSE TO  SHOW CAUSE ORDER OF FEBRUARY 26, 2021**

*Oral argument requested*

Richard W. Gannett, *pro se,*  ("Gannett") respectfully responds to the show cause order of

February 26, 2021 under L. R. D. Mass 83.6.1  - L. R. D. Mass.  83.6.11.  *See Selling v.*

*Radford,* 243 U.S. 46  (1917).


I.      **Introduction**

Gannett should not be bound by the Single Justice's Amended Memorandum of the

Massachusetts Supreme Judicial Court.  Gannett's former lawyer, Mel L. Greenberg[1], ("Atty.

Greenberg") had an unwaivable conflict of interest which he failed to disclose to Gannett on the

day of the Hearing Committee in February 2019[2].  Gannett relies upon this Memorandum, case

law construing Mass. R. Prof. C. 1.7,  and any allowed oral argument as a rationale to resist the

same discipline imposed by the SJC.    Gannett respectfully requests that the Court conduct a

hearing,  examine the entire proceeding through the lens of the facts set forth within this

Memorandum,  and then enter a public reprimand against Gannett, but deny the imposition

---

[1]Atty. Greenberg's online biography says he served as an Associate Justice in the
Massachusetts Appeals Court, the Massachusetts Superior Court and in the Massachusetts
District Court and claims he is an expert in legal ethics.

[2]The conflict commenced in October 2018.

of any discipline beyond a public reprimand

To the extent  the Massachusetts Board of Bar Overseers ("BBO") produces documents as a result of an Equitable Bill for Discovery ("EBD")  served upon them,  Gannett reserves the right  to serve a supplemental Memorandum offering additional argument currently unknown to Gannett. The Deputy Sheriff informs Gannett  that service of process and the

EBD was effectuated upon the BBO on February 24, 2021.

Gannett contends that reciprocal discipline is not warranted  pursuant to L. R. D. Mass. 83.6.9(e)(1)(A)-(D) and (2), other than a public reprimand.

## II.    History

Atty. Greenberg was hired because he presented himself to Gannett and to Gannett's professional liability insurance company Minnesota Lawyers Mutual Insurance Company ("MLM"), as an expert on ethics, an expert in bar proceedings and a master of civil procedure given his 30 years on the bench of the Massachusetts Trial Court with many years on the Massachusetts Appeals Court.

At all material times Gannett was represented at the Board of Bar Overseers - ("BBO matter") by counsel, retained by his admitted insurance carrier, MLM.

Gannett's former attorney, Atty.  Greenberg,  was approved and retained by MLM. In addition to collecting fees from MLM,   Gannett paid additional fees to Atty. Greenberg. MLM had primary responsibility for his oversight and the payment of fees.   Gannett paid MLM premiums and in return Gannett obtained defense coverage and defense oversight according to written communications from MLM.  Atty. Greenberg was also hired by MLM for defense of an arbitration ("Arbitration matter").  At the same time he had primary responsibility for defense of the BBO matter.

Unbeknownst to Gannett, Atty. Greenberg failed to serve an Opposition to a Summary Judgment Motion concerning the Arbitration matter.  The Summary Judgment Motion also sought   to dissolve Gannett's attorney lien and seek turnover of Gannett's funds held in escrow. Atty. Greenberg never informed,  nor disclosed to Gannett,  that Atty. Greenberg was served with a summary judgment motion seeking to i)dissolve Gannett's attorney lien and ii) seek turnover of Gannett's funds held in escrow.

 The following time line is critical: The summary judgment motion was served in October 2018 under Massachusetts Superior Court Rule 9A.  Atty.  Greenberg was obligated  to defend this and serve an Opposition within 21 days as he was holding a substantial MLM check **Ex. A** to be used in payment of an arbitration award against Gannett.  Gannett also received his own award in the Arbitration matter where Gannett appeared *pro se.*  These funds were held in escrow as a result of yet another Superior Court Order.  **Ex. B.**

Atty. Greenberg did nothing. He did not respond in any way to the Summary Judgment Motion resulting in this endorsement. **Ex. C.**  He defaulted.  This default resulted in Gannett's escrowed  funds being released, Gannett's attorney lien being dissolved, Gannett's funds used to pay an arbitration award instead of MLM funds that Atty. Greenberg held in the form of a check. **Ex. A.**

This default is unthinkable conduct for a retained insurance defense lawyer possessing a settlement check to resolve a dispute for a fully insured loss.   One aspect of the duty of a defense lawyer hired by an insurance company is to file the right papers at the right time in the right court.

Atty. Greenberg's conduct went even further downhill thereafter. He feigned ignorance about his  default and told Gannett that he lacked knowledge of what occurred when in fact he

knew all along what occurred and took steps to cover up his malpractice.

Gannett possesses voice mails left by Atty. Greenberg on Gannett's phone.   **Ex. D.**
These recordings were voluntarily left by Atty. Greenberg.    Gannett can produce the audio for
this Court to hear on its own to evaluate.[3]  A client of an attorney is entitled to believe his lawyer
when the lawyer leaves telephone messages like the messages Atty. Greenberg left for Gannett.

In early 2019, following Atty. Greenberg's default, an offer on the BBO matter was
communicated to Atty. Greenberg[4]  just weeks before the Hearing Committee convened.
Gannett was not aware Atty. Greenberg defaulted in the Arbitration matter four months earlier by
failing to defend him.

Gannett only became aware in May 2019 of Atty. Greenberg's malpractice when Atty.
Greenberg shared a correspondence with Gannett showing the funds had already been released in
November 2018,  when the unopposed summary judgment was allowed.  Up until this point
Atty. Greenberg had misrepresented the actual status to Gannett of the Arbitration matter. This
misrepresentation period overlapped with the time period of February 2019 when the public
reprimand offer occurred and the Hearing Committee convened.

### III.    The violation of Mass. R. Prof. C. 1.7 warrants disregarding the SJC ruling and equity and good conscience requires  only a public reprimand

Gannett now contends that Atty. Greenberg's continued representation of Gannett after

---

[3]The Clerk has suggested to Gannett that he forward the recorded messages on a CD by
U. S. Mail to the Clerk's Office.

[4]The precise means of the offer from the BBO to Atty. Greenberg is unknown to Gannett
as Atty. Greenberg never delivered a written communication on this critical matter.  Atty.
Greenberg relayed the offer in a phone conversation. On that matter Gannett still awaits the entire
file from Atty. Greenberg and the BBO.

October 2018 constituted  conduct prohibited by the Massachusetts Rules of Professional

Conduct warranting the rejection of the BBO hearing committee report and the rulings of the

Single Justice Amended Memorandum[5].  This is because under Mass. R. Prof. C. 1.7 Atty.

Greenberg had a duty to communicate to Gannett about the details of his default, explain to

Gannett that Atty. Greenberg lost all of Gannett's funds, that Atty. Greenberg had to obtain

informed consent from Gannett to continue to represent Gannett past October 2018. *See* Mass. R.

Prof. C. 1(c) and comments 6-8 thereto[6].

      Gannett asserts that the Massachusetts Board of Bar Overseers' non-recognition to date

of  the egregious violation which has occurred as a result of  Gannett's former lawyer, Mel L.

Greenberg, violating Mass. R. Prof. C. 1.7, warrants this Court to disregard any findings

against Gannett beyond the imposition of a public reprimand.[7]   In other words, Gannett does

not suggest he should be completely exonerated.  To the best of Gannett's knowledge,  Gannett

was offered a public reprimand by BBO Assistant Bar Counsel Bruce Eisenhut before the

commencement of the Hearing Committee testimony.  But this offer of a publc reprimand was

---

[5]This is being appealed to the Full Bench

[6]"... Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel...."

[7]Gannett has informed the BBO that he will accept a public reprimand which was offered to him. Gannett has never seen any documents about this offer and believes there is a written offer which has never been delivered to Gannett. Gannett has asked his former lawyer, Atty. Greenberg,  for his file   -   this request  has been largely ignored. Similarly the BBO refuses to produce Gannett's file to Gannett,  despite a written request under G. L. Chapter 66 and the service of a lawsuit now pending in the Massachusetts Superior Court pleading claims  for discovery -  an Equitable Bill for Discovery.

only communicated to Atty. Greenberg, who was conflicted[8] under Mass. R. Prof C. 1.7. The Restatement (Third) of the Law Governing Lawyers § 6, at 65-66 (2000) provides thirteen judicial remedies "[f]or a lawyer's breach of a duty owed to the lawyer's client or to a nonclient."[9] Here, prongs 10 and 12 are applicable and closely aligned to the relief Gannett seeks: (10) denying the admission of evidence wrongfully obtained; (12)granting a new trial. Prong 12, granting a new trial, would have effect of eliminating the SJC's Amended Memorandum as it was premised upon the Hearing Committee's report which only occurred with the participation of a lawyer who was conflicted and was obligated to withdraw, but failed to do so.

Atty. Greenberg was obligated to explain his default in detail and obtain Gannett's informed consent to be "confirmed in writing." He did none of those of things and there is no writing whatsoever.

Numerous serious inconsistencies make the entire state court proceeding untrustworthy warranting a remand to the Hearing Committee for a new hearing, or this Court

---

[8]*RFF Family Partnership, LP v. Burns & Levinson, LLP et al.* 465 Mass. 702 (2013).

[9]"(1) awarding a sum of money as damages;
(2) providing injunctive relief, including requiring specific performance of a contract or enjoining its nonperformance;
(3) requiring restoration of a specific thing or awarding a sum of money to prevent unjust enrichment;
(4) ordering cancellation or reformation of a contract, deed, or similar instrument;
(5) declaring the rights of the parties, such as determining that an obligation claimed by the lawyer to be owed to the lawyer is not enforceable;
(6) punishing the lawyer for contempt;
(7) enforcing an arbitration award;
(8) disqualifying a lawyer from a representation;
(9) forfeiting a lawyer's fee ...;
(10) denying the admission of evidence wrongfully obtained;
(11) dismissing the claim or defense of a litigant represented by the lawyer;
(12) granting a new trial; and
(13) entering a procedural or other sanction."

disregarding the entire state court proceeding as fundamentally flawed. The BBO Rules require a so-called "Mandatory Prehearing Conference" under BBO Rule 3.23  This did not occur. The BBO failed to schedule this to Gannett's detriment.[10]  Because of this Gannett never saw nor had the opportunity to review the documents that were admitted in evidence "by agreement" [11] against him.

      Atty. Greenberg failed to show them to Gannett and Atty. Greenberg consented to the admission of these documents. Had Gannett had a Mandatory Prehearing Conference he could have objected to them,  or at least preserved his objections.  Atty. Greenberg never conducted any discovery at all.  He never told Gannett that Gannett had the right to conduct discovery. Atty. Greenberg never produced Gannett's client's policy of insurance demonstrating that  Lee Bank (the client's commercial lender)  was <u>not</u> named a loss payee.  In fact, Gannett's client's commercial policy stated  the word "NONE" in the area designated for a loss payee.

      Gannett advised Atty. Greenberg that Gannett's research indicated that a lender who claims to be a loss payee, but  who is not specifically named as a loss payee in a policy cannot obtain the benefit of loss payee status and is not entitled to payment from said  casualty policy. This was also the time to submit motions in limine.  Atty. Greenberg submitted none.

      It is undisputed that Atty. Greenberg had a legal duty to defend Gannett by serving a comprehensive Opposition to the summary judgment in the Arbitration matter.  This he failed to do.   He promised MLM and Gannett to take the Arbitration matter and filed an appearance. **Ex. E.**  He never filed anything after that, but told Gannett he would.  Atty. Greenberg was

---

[10]Gannett was deprived of his right to due  process.

[11]Gannett never agreed to any of these documents.  Atty. Greenberg failed to produce them, or scan them so Gannett could contribute and participate in his defense.

informed that adhering to deadlines was critical given the nature of the opponent and the opponent's counsel.   Atty. Greenberg accepted the defense assignment on those terms.

His personal conflict began in October 2018.  This did not stop Atty. Greenberg from requesting and collecting additional fees from Gannett in 2019, months after the time Atty. Greenberg had already defaulted and lost Gannett's earned fees in the Arbitration matter without acknowledging this default to Gannett.

Attached is  the $10,000 additional fee payment Atty. Greenberg requested from Gannett. **Ex. F.**  On the day Gannett sent the $10,000.00 additional payment to Atty. Greenberg, Gannett was not notified by Atty. Greenberg that Gannett's funds were lost in November 2018.

Accepting this $10,000.00 additional fee payment was a false confirmation by Atty. Greenberg to Gannett that the defense was proceeding satisfactorily. Of course, had Atty. Greenberg been honest with Gannett, as he was required to be, he would have returned  the $10,000.00, uncashed, to Gannett explaining that he was unable to continue any further representation given his October 2018 default.

Atty. Greenberg's violation of Mass. R. Prof. C. 1.7[12] is admissible evidence that Atty. Greenberg's failure to withdraw from the two cases he represented Gannett on[13]  is grounds to set aside the conclusions of the Hearing Committee and the SJC amended memorandum under *Selling v. Radford,* 243 U.S. 46, 51 (1917).   In fact, Rule 1.7 commentators argue that anything the conflicted lawyer does for his client after such a default should be deemed suspect. Benjamin P. Cooper *When Clients Sue Their Own Lawyers for Failing to Report Their Own Malpractice.*  41 Hofstra L. Rev. 441 (2015).

---

[12]Atty. Greenberg covered up his violation of Mass. R. Prof. C. 1.7

[13]Which he  subsequently covered up - see Gannett Affidavit ¶ 2.

**Standard of Review**

"A state disciplinary decision is "not conclusively binding on the federal courts," but it is "entitled to respect." *In re Ruffalo,* 390 U.S. 544, 547 (1968). The discipline imposed by the state is the starting point of the inquiry, but this Court has a duty "to determine for ourselves [an attorney's] right to continue to be a member of this Bar." *Selling*, 234 U.S. at 50.*"  In re: Martin* D. Del. No. 14-242 p. 11.

Atty. Greenberg, a conflicted attorney,  never showed the BBO offer of a public reprimand to Gannett,  never explained the offer of a public reprimand to Gannett, and  never communicated in writing, or verbally,  about the relevant detriments and benefits of accepting such an offer or rejecting such an offer.  *See In re Fitzgerald*, 982 A.2d 743 fn. 10 (D.C. 2009). Gannett contends that Mass. R. Prof. C. 1.4  required Atty. Greenberg to fully communicate the offer of a public  reprimand and produce any writing about the offer to Gannett for Gannett's review.

No such writing was ever communicated to Gannett.[14]    Atty. Greenberg never communicated the benefits of accepting or rejecting the offer.  He also never communicated in early 2019 that he had defaulted in 2018[15] and was unable to actually represent  Gannett under case law construing Mass. R. Prof. C. 1.7.  *Commonwealth v. Cousin* 478 Mass. 608 (2018).

---

[14]Gannett Affidavit ¶ 3.

[15]During all of this time period Gannett was an active insured of Minnesota Lawyers Mutual Ins. Co. whose advertising brochures remind its insureds that they are in good hands and that MLM only hires experienced competent counsel for insureds and actively monitor them. This is not true, if they did  Atty. Greenberg could not have defaulted and hid his malpractice from Gannett,  as  MLM would have taken steps to resolve this long ago.  MLM has refused to discuss this with Gannett and has stonewalled him at every turn. Evidence of MLM's complicity and malfeasance is that MLM stopped communicating with Gannett, retaining its own law firm.

Atty. Greenberg was required to withdraw under Mass. R. Prof. C. 1.16(a)(1).

There is simply no basis nor argument which Atty. Greenberg could assert to maintain his ability to stay on Gannett's Superior Court case and BBO matter after October 2018.

The BBO cannot argue that this is merely "ineffective assistance of counsel."   The BBO will likely argue that there is no right to counsel in bar disciplinary matters.  But the facts presented here are completely distinguishable.  The American Bar Association ("ABA") supports Gannett on this.

The Comments to the ABA's  Rule 18 of the Model Rules for Disciplinary Enforcement mandate both due process and the right to counsel.  Gannett's research indicates that comments or commentary may be cited as persuasive authority.

> Commentary
> "The holder of a license to practice law is subject to discipline for breaches of the standards of professional conduct; the license must not be arbitrarily taken away and the holder is entitled to procedural due process in any proceeding relating to such conduct. Such due process rights include fair notice of the charges, right to counsel, right to cross-examine witnesses, right to present arguments to the adjudicators, right of appeal (Rule 11); and right to subpoena and discovery (Rules 14 and 15)

"Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules."    Scope 1 Rule SJC Rule 3:07.  When one adds the language of Scope 1 to Rule 18 of the ABA Model Rules it is apparent that any lawyer who has a Rule 1.7 conflict, as Atty. Greenberg did in October 2018,  could never be deemed a "lawyer" for Gannett. When these two rules are harmonized and applied to the facts herein the Hearing Committee and the SJC are prosecuting a lawyer who reasonably believed he was represented by an un-conflicted insurance appointed and monitored counsel, and self-professed expert in legal ethics when, in fact, Gannett had no representation.

Under *Selling* such a circumstance stands as a basis to resist any state court findings and

for this Honorable Court to impose a sanction it determines based upon its own assessment. Even after hearing all of the testimony and documents offered into evidence with the Hearing Committee, Assistant Bar Counsel Bruce Eisenhut's recommendation only increased from a public reprimand (pre-hearing) to a six month suspension (post-hearing).

Atty. Eisenhut, a career BBO prosecutor, even after hearing all of the evidence. concluded that a six month suspension was the appropriate sanction, not disbarment,  His suggestion was for a short suspension, not disbarment.  The funds at issue were all returned to Lee Bank long before the Hearing Committee convened[16]. Lee Bank settled their claims concerning a business loan with Gannett's client in a formal settlement agreement. Gannett was a party to the settlement agreement.    Lee Bank requested the BBO to drop the investigation[17].

The BBO may say, or contend,  that Gannett cannot raise Atty. Greenberg's conflicts as these conflicts were not raised at the Hearing Committee and that such an argument is now precluded.  Of course,  this is faulty reasoning due to the following factors: i) Gannett never knew of the conflict at the time the Hearing Committee heard testimony, ii)Gannett could not raise the conflict at the hearing committee as Gannett was not aware of it at that time, iii) Gannett was permitted to trust his then lawyer, iv)declaratory relief is available to Gannett under the *Selling* prongs. *See Margo Gates et al v. Mountain View MHC, LLC, et al.* 99 Mass. App. Ct. 1112 (2021). (Rule 23.0).

In *Mountain View* the Appeals Court held that even though individual tenants had neither intervened in nor appealed from a  Ludlow, MA rent control board hearing they could maintain a suit against the landlord for an illegal rent increase on their individual rent payments

---

[16]Gannett Affidavit ¶ 4, 5.

[17]Gannett Affidavit ¶ 5.

under G. L Chapter 93A. The viability of a 93A claim exists despite the Ludlow, MA rent control board approving a rent increase.  The Appeals Court affirmed the Housing Court 93A award and permitted attorney fees to be awarded to the appellee tenant group for the effort resisting the landlord during the appeal.

The Appeals Court held that the language of an existing Code of Massachusetts Regulation ("CMR") precluded such an increase because the basis for the increase was to upgrade a sewer system, an obligation of the landowner that could never be passed on to tenants. Both the Housing Court and the Appeals Court concluded that the landlord's repeated disregard of the existence of the CMR was a basis to impose liability and the mere fact that the Ludlow Rent Control Board granted the rent increase did not absolve the landlord of compliance with the CMR.

The *Mountain View MHC* ruling is analagous to the matter herein.  Gannett can assert that the remedy for a Rule 1.7 violation can be asserted after the Hearing Committee event terminated and that the Rule 1.7 violation was so pervasive that any finding by the Hearing Committee  must stand aside, or be set aside, as the primacy of the Rule 1.7 violation supersedes later events.  Had Gannett known of the conflict Gannett would have fired Greenberg and would have hired competent counsel to negotiate an end to the BBO matter with no public hearing.

**Remedy of Mistrial for Violation of Conflict of Interest**

There is Massachusetts authority for the proposition that such a conflict of interest warrants a mistrial.  *Adoption of Jacqueleine* 2016 Mass. App. Unpub.  LEXIS 1061 fn. 6. :

> "The trial began in February, 2014; however,
> before it concluded, a mistrial was declared after it
> was determined that the father's attorney had a
> conflict of interest. ...."

*Adoption of Jacqueleine* concerns a minor.  The briefs and appendix are impounded.

Gannett is unable to produce these documents other  than the Appeals Court ruling.  This is persuasive but not binding precedent.  Following a search this is the sole ruling located  in which a mistrial is declared when a party's attorney had a conflict of interest.

Gannett did not have the opportunity to move for a mistrial because Gannett did not know of the conflict. Had he known he would have so moved.

Because the CMR precluding increasing rent for a sewer upgrade preempted the impact of the Ludlow Rent Control Board decision, the landlord beached G L Chapter 93A.  In this matter Gannett contends compliance with Rule 1.7  preempts the Hearing Committee report. All lawyers including the Hearing Committee members and other BBO professionals must honor Rule 1.7.

Although the Rule 1.7 violation came to light well after the Hearing Committee convened in February 2019, Gannett only learned of the  Rule 1.7  violation in May 2019 due to Atty. Greenberg's suppressing information he was legally  obligated to disclose to Gannett in October 2018.  Inasmuch as the Rule 1.7 conflict was unknown at the time the  Hearing Committee convened, a mistrial should  be declared.

Mass. R. Prof C. 1.7 Comment 10 provides specific support.

> "[10] The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. Similarly, when a lawyer has discussions concerning possible employment with an opponent of the lawyer's client, or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client. In addition, a lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed financial interest. See Rule 1.8 for specific Rules pertaining to a number of personal interest conflicts, including business transactions with clients. See also Rule 1.10 (personal interest conflicts under Rule 1.7 ordinarily are not imputed to other lawyers in a law firm"

Dean Cooper of the University of Mississippi School of Law  has written extensively on this precise subject supporting Gannett's claim that Atty. Greenberg was required to withdraw in 2018.  Benjamin P. Cooper *When Clients Sue Their Own Lawyers for Failing to Report Their Own Malpractice.*  41 Hofstra L. Rev. 441, 446 (2015):

> Once a lawyer's conduct has given rise to a substantial malpractice claim by his client, his personal interests are adverse to his client's. 33 It may not seem, at first blush, as if the lawyer has a conflict, since both the lawyer and the client have an interest in obtaining a favorable outcome. But upon closer inspection, it is apparent that the lawyer's interest is not necessarily aligned with the client's.3 4 The lawyer may be preoccupied with his own problems: for example, in a litigation context, he might want to settle the litigation quickly in order to try and hide his mistake or minimize the damages available to the client in a subsequent malpractice case. 35 Another possibility is that the lawyer might want to litigate the case to the end to prove that his (or his law firm's) original advice was correct while the client's interest is best served by reaching the quickest and least expensive resolution of the litigation. 6 As I previously described this situation:

>> Because of his tunnel vision, the attorney is not in a position to realistically evaluate the claim asserted against the client or to give independent legal advice that is in the best interest of the client. Rather, the conflicted lawyer becomes fixated on vindicating his or his firm's own position instead of acting in the best interests of the client. 37

This article cites several scenarios which Gannett asserts as persuasive authority that Atty. Greenberg would be culpable in a civil action and possessed an actual conflict.  *Bayview Loan Servicing, LLC v. Law Firm of Richard M. Squire & Assocs.*, 2010 WL 5122003 (E.D. Pa.. Dec. 14, 2010). In *Bayview* the Squire Law Firm missed a preservation step to preserve the lender's right to a deficiency judgment.   The Law Firm covered up the loss.  The Eastern District of Pennsylvania held that this cover-up stated a viable claim against the Squire Law Firm denying the Motion to Dismiss.

Like Cooper's article suggests, here, conflicted Atty. Greenberg neglected to insist upon a

mandatory prehearing conference, neglected to communicate the BBO's offer in writing to Gannett with an explanation and a reasoned recommended course of action, and was unprepared for and at the hearing.

Atty. Greenberg abandoned Gannett in two instances: i)he failed to submit his own proposed findings after telling Gannett that he had a "good defense."  Gannett was forced to submit his own findings under his own signature,  even though Atty. Greenberg's appearance was never withdrawn. ii)he failed to file a timely notice of appeal forcing Gannett to hire a new lawyer to resurrect his lost appeal rights, forfeited by Atty. Greenberg when he missed yet another deadline and defaulted.

**Gannett never should have had a public hearing at the Hearing Committee**

When Gannett learned  his appeal rights were forfeited,   Gannett hired new counsel, Arnold Rosenfeld, Esq.   Atty.  Rosenfeld reviewed the transcript, the file and the Hearing Committee report.  Atty. Rosenfeld immediately informed Gannett that Atty. Greenberg should have explained to Gannett that going to the Hearing Committee was an incorrect tactic and that accepting the offer of a public reprimand was the correct tactic.[18]   Atty. Rosenfeld explained to Gannett that Atty. Greenberg's advice that Gannett had a "good defense" was incorrect[19] and that Atty. Greenberg trying the case at the Hearing Committee was legal malpractice and that the proper course is to accept the recommendation of the BBO Prosecutor and conclude the case by a public reprimand if such an offer is communicated.  Gannett followed the advice of conflicted Atty. Greenberg and proceeded to a hearing - a course of action no other defense attorney would have proceeded on.

---

[18]Gannett Affidavit ¶ 6.

[19]Gannett Affidavit ¶ 6, 7.

**Atty. Greenberg failed to withdraw**

Contrary to Mass. R. Prof. C 1.7 and cases construing this Rule, Atty. Greenberg failed to withdraw his appearance at the Board of Bar Overseers in October 2018[20], when Atty. Greenberg failed to respond to the summary judgment motion he was hired by MLM to defend. A turnover order was allowed. **Ex. C**. Gannett never knew anything about this.

This constituted egregious conduct by Atty. Greenberg. Upon failing to oppose summary judgment and losing Gannett's funds, Atty. Greenberg was obligated to cease all work on Gannett's behalf, report his malpractice to Gannett, explain his misconduct to Gannett, and have Gannett represented by independent counsel during this period.

None of this occurred. *See In re: Tallon* 447 N. Y. S. 2d 50, 86 A.D. 2d 897 (App. Div. 1982); *Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 514, 66 Cal.Rptr.3d 52. ("attorneys have a fiduciary obligation to disclose material facts to their clients, an obligation that includes disclosure of acts of malpractice."). Ethics Opinion 1092 New York State Bar Association. May 11, 2016; *In re Fitzgerald*, 982 A.2d 743 fn. 10 (D.C. 2009).

Atty. Greenberg failed to withdraw. He kept on representing Gannett in both the BBO matter and the Arbitration matter. Published authority throughout the country concludes Atty. Greenberg had an unwaiveable and hopeless conflict of interest as of October 2018 and could not represent Gannett any longer.

Decisions construing Rule 1.7 required Atty. Greenberg to obtain Gannett's written informed consent and further requiring Gannett to be advised by a separate independent lawyer

---

[20]Gannett did not learn of Atty. Greenberg's failure to defend Gannett in the Arbitration matter until May 2019, some four months <u>after</u> the Hearing Committee heard testimony. Atty. Greenberg failed to disclose the loss of Gannett's defense and the loss of Gannett's funds to Gannett. Atty. Greenberg also did not protect Gannett's funds.

before Atty. Greenberg could continue to represent  Gannett ---- past October 2018 ----  during the

BBO offer period and the hearing committee event.  Atty. Greenberg was required to deliver a

comprehensive writing to Gannett explaining all of this to Gannett. No such writing was delivered

and no informed consent was obtained.

     This is completely distinguishable from  so-called "ineffective assistance of

counsel." In fact, it is entirely different.

     Due to Atty. Greenberg's conflict under Rule 1.7,  the offer in compromise should have been

communicated to Gannett directly.  As a former Massachusetts Appeals Court Judge and a self-

professed expert on legal ethics,  Atty. Greenberg should have advised the BBO in October 2018

and thereafter that he could no longer represent Gannett due to the unwaiveable conflict and sought

to withdraw obtaining successor counsel for Gannett.

     Gannett does not know the exact terms of the offer –  and never did.  Gannett seeks his

BBO  file concerning the Lee Bank/McKenna matter and has lodged an Equitable Bill for Discovery

in the Massachusetts Superior Court consistent with *Wolfe.*  .

     Atty. Greenberg's default triggered his contemporaneous requirement to withdraw from the

BBO matter and alert Gannett in writing to his malpractice as is required by Mass. R. Prof. C. 1.7.

     The documents at the BBO are highly relevant and material to respond to this show cause

order.

     Without success Gannett has sought his files from his prior attorney, Atty.  Greenberg. One

of these sought documents is the communication of an offer of a public reprimand extended to

Gannett prior to the commencement of the Hearing Committee in February 2019.

     Gannett was never provided with the precise terms of the offer of a public reprimand.

     Given  the  foregoing,  Gannett has demonstrated that given Atty. Greenberg's unfulfilled

duty to withdraw, Gannett had a hopelessly conflicted lawyer.

In fact, upon information and belief, the BBO's own internal guidelines, located at its General Counsel's office, provide for coordination with a list of lawyers able to assist respondents who lack counsel.

Given that, the BBO recognizes the need and efficacy for such legal representation when a lawyer is the subject of any contact from the BBO. Obviously, the BBO does not suggest respondents hire lawyers with un-waiveable conflicts.

In addition, Gannett is also attempting to retrieve his files from others involved: Atty. Greenberg, his insurer, Minnesota Lawyers Mut. Ins. Co., and Peabody & Arnold LLP, the local attorneys for said admitted insurer. Without access to all of these files Gannett's ability to present his response to the show cause order are stymied as vital information has been withheld from him throughout this process.

**ABA Documents inaccessible**

As of January 12, 2021, Gannett received the attached email from the American Bar Association. **Ex. G**. Given the pandemic Atty. Rosen, the ABA attorney in charge of these archived materials is unable to comply with Gannett's request to access materials in a locked building off-limits - even to staffers.

The requested documents are part of Gannett's response to the show cause order. Certain ABA resolutions which are part of the planned response cannot be accessed due to the current Pandemic which has shuttered businesses and institutions

**Equitable Bill of Discovery**

During December 2020 Gannett submitted a written request for his BBO file concerning the Lee Bank/Mark McKenna matter from the Massachusetts Board of Bar Overseers

via a written request,  under G. L. Chapter 66, §10.  **Ex. H**.

Shortly thereafter, Gannett was served with a written response that such a  request would neither be fulfilled,  nor honored,  citing *Kettenbach v. Board of Bar Overseers* 448 Mass. 1019 (2007).  There was a vague response that unidentified documents would be produced;  however, these were an offer to produce documents already filed in public — which any person could access simply by asking a Clerk of Court for copies.

Gannett believes that *Kettenbach* is inapposite.   In *Kettenbach* the BBO files of a member of  the judiciary (or a former member of the judiciary) located at the Massachusetts Board of Bar Overseers were sought by Frances Kettenbach, an individual aligned with one faction of the DeMoulas family.  It is well known that various DeMoulas family members engaged in a long running public dispute to maintain control  of the DeMoulas Supermarket empire.  According to public records,  the losing faction expressed disappointment with the presiding Superior Court Judge – the losing faction then took steps to demonstrate her alleged lack of neutrality.

Here, Gannett is seeking his own files concerning the Lee Bank/Mark McKenna  matter - <u>not</u> those of anyone else. These records are indispensable  to assert <u>his own defense</u> and to adequately respond to this Notice to Show Cause.

Given that,  the ruling which the Bar Counsel's office has cited is inapposite.  There is a vast difference between a member of the DeMoulas supermarket family (who challenged the trial judge's findings), seeking information about said trial judge,  and a lawyer responding to a United States District Court Notice to Show cause premised upon a ruling of a Single Justice. Here, Gannett simply wants to present a complete record of the prior proceedings to adequately defend himself.

Gannett's further research indicates that an Equitable Bill of Discovery is required to be lodged to achieve production of the Lee Bank/McKenna file in the possession of the Board of Bar Overseers.

This Equitable Bill of Discovery was filed after a written response under G. L. Chapter 66, §10 was served and no documents (other than documents one could download from public sources) would be produced. **Ex. I.**

The Deputy Sheriff reports that service was achieved in hand upon Rodney Dowell in his capacity as Bar Counsel on February 24, 2021. **Ex. J.**

Equitable Bills of Discovery are not common, but this equitable tool remains valid. *Wolfe v. Massachusetts Port Authority* 366 Mass. 417 (1974). The Massachusetts Appeals Court as recently as October 2020 reaffirmed the viability of the Equitable Bill of Discovery in *Atchue v. Benchmark Senior Living LLC* 158 N. E. 3d 69, 73 (Mass. App. Ct. 2020). Atchue reversed the Superior Court and held that such a discovery device is preserved, despite the advent of modern rules of civil procedure. The rationale of *Wolfe* and *Atchue* are authority for the relief Gannett seeks herein.

In *Wolfe* the aggrieved, injured motorist was unsuccessful in his request to obtain toll receipt records from the Massachusetts Port Authority when such a request was instituted under G. L c. 66. The goal, as organized by the motorist's law firm, was to seek such records from Massport to help identify a truck who caused personal injury to the motorist.

When Massport refused to produce records the aggrieved party, undeterred, retained counsel, who filed an Equitable Bill of Discovery seeking these toll records. The SJC agreed:

> It is settled **\*\*425** that a bill of discovery may be maintained, to aid the plaintiff in a suit which he intends immediately to bring, as well as in a suit already brought, if the bill discloses a cause of action.' *Wolfe* at \*419.

Here, a proceeding, a suit,  or in the nature of a suit,  has been brought and *Wolfe* holds that the asserted defense  ---- *Kettenbach*   ---- in response to Gannett's Chapter 66 letter*,  is* not controlling,  given the holding of *Wolfe.  Wolfe* at * 421  explicitly permits an equitable bill of discovery where a request, predicated upon Chapter 66,  may not yield the same document production.

**The Rule 1.7 Violation Is Meritorious Grounds for Disregarding the State Court Amended Memorandum and Imposing a Lesser Sanction of a Public Reprimand**

Even without initiation of the Equitable Bill for Discovery, or if the   Court disregards the documents that might be produced therefrom,  the profound violation of Mass. R. Prof. C. 1.7 by Gannett's former lawyer is evidence that the entire state court proceeding is tainted;  any reliance which this Honorable Court may place upon the results of a BBO hearing committee with Atty. Greenberg's defalcation unknown to Gannett cannot stand.  Under prongs A, B C and D of  L. R. D. Mass. 83.6.9(e)(1) Gannett can show that the same discipline should not be imposed here

Wherefore,  Richard W. Gannett, *pro se*,  respectfully seeks the following relief:

I.      That the Court conduct a hearing;

II.     That the Court examine the entire proceeding through the lens of the facts set forth herein;

III.    That the Court enter a public reprimand against Gannett but deny the imposition of any discipline beyond a public reprimand.

Respectfully submitted,
Richard W. Gannett,

/s/ Richard W. Gannett

_____
Richard W. Gannett, *pro se*
165 Friend Street
Boston, MA 02114
(617)367-0606
rwgannett@gannettlaw.com

Dated: March 07, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March 2021, the foregoing document was served via the CM/ECF System to the Clerk, United States District Court for the District of Massachusetts One Courthouse Way  Boston, MA  02210.

/s/ Richard W. Gannett

_____

Richard W. Gannett