UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: RICHARD W. GANNETT

No. 20-mc-91636-RGS

ORDER OF RECIPROCAL SANCTION

May 19, 2022

STEARNS, D.J.

On March 16, 2022, the Massachusetts Supreme Judicial Court (SJC) ordered Respondent Richard W. Gannett disbarred from the practice of law. *See In the Matter of Richard W. Gannett*, 498 Mass. 1007 (2022).  Upon notice of the disbarment, this court issued an order to Gannett to show cause why reciprocal disbarment should not be imposed by the federal court pursuant to District of Massachusetts Local Rule (L.R.) 83.6(2), *see* Dkt #19. Repeating essentially the same arguments that he made to the Massachusetts courts and the Board of Bar Overseers (the Board or BBO), Gannett contends that he "should not be bound by either the Supreme Judicial Court's decision or the Massachusetts Supreme Judicial Court's Single Justice Amended Memorandum [because his] former lawyer, Mel L. Greenberg, had an unwaivable conflict of interest [for his alleged malpractice when representing Gannett in a separate matter] which he failed to disclose to

Gannett on the day of the [BBO] Hearing . . . in February [of] 2019." *See* Response at 1 (Dkt #20).  Gannett further accuses Greenberg, a former Massachusetts Superior Court Justice and Associate Judge of the Massachusetts Appeals Court, of incompetence for failing to advise him of BBO counsel's proposed stipulation and recommendation of sanctions.  He also claims that Greenberg ineffectively represented him during the BBO proceedings in violation of his right to due process.

**Prior Proceedings**

Gannett's disbarment arose out of his joint representation of Amaral Enterprises, LLC, an owner of commercial property, and Bearbones, a sister company that operated a bakery on Amaral's property.  Both clients took loans from Lee Bank in late 2012, secured by a second mortgage on the Amaral property.  Amaral borrowed $115,000 and Bearbones borrowed $70,000.  In February of 2013, water damage to the bakery and its equipment caused a shutdown in business and Amaral and Bearbones defaulted on their monthly loan payments to Lee Bank.  Gannett assisted Amaral and Bearbones in filing insurance claims with Peerless Indemnity Insurance Company.  Gannett also negotiated a forbearance agreement between Lee Bank and Bearbones which stipulated that the "Borrower shall immediately deliver to Lender future insurance proceeds relative to the

Insurance Claim.  Until loans are repaid to Lender's satisfaction, the Lender, in its sole and absolute discretion, shall determine how the money received from the Insurance Claims is distributed." *In re Gannett*, 489 Mass. at 1008.

On August 4, 2015, Peerless sent Gannett a check for $42,227.28, made payable to Gannett, Bearbones, Amaral, and Lee Bank.   On August 6, Lee Bank sent a letter to Gannett stating that it was aware of the check and that he was not authorized to negotiate it or deposit the funds into his escrow account.   On August 7, 2015, Lee Bank's attorney emailed Gannett iterating that the forbearance agreement required that the insurance proceeds be paid to Lee Bank, which had sole decision-making authority over disbursements. Notwithstanding, Gannett deposited the Peerless check into his IOLTA account and, without Lee Bank's authorization, between August 10, 2015, and June 1, 2016, wrote nine checks to himself from the account totaling the Peerless payment.

Acting on these facts, BBO counsel filed a disciplinary petition against Gannett alleging that he had misused funds in his IOLTA account in violation of Professional Rule of Conduct 1.15(b)(2)(ii).  In response, Gannett claimed that the deposit was at his clients' instruction, that they had approved all of the checks that Gannett had made payable to himself, that he possessed an attorney lien on the funds, and that he had legal access to the monies under

3

the Common Fund Doctrine.  After an evidentiary hearing, the BBO hearing committee recommended Gannett's disbarment.  After a missed deadline, the BBO allowed Gannett (represented by new counsel) to file an appeal.  At the appellate hearing, Gannett asserted that his prior counsel had advised him against accepting Bar Counsel's offer to present the Board with Gannett's stipulation to his violation of Rule 1.15(b)(2)(ii) in return for Bar Counsel's recommendation of a public reprimand.  Gannett also complained that Greenberg failed to advise him of the risks of proceeding to a hearing, and to adequately prepare his client's testimony (which was in some respects adverse to Gannett's interest).

The Board adopted the Hearing Committee's recommendation of disbarment, finding that Gannett had intentionally misused IOLTA funds in violation of several rules of professional conduct.  The Board rejected Gannett's claims of ineffective assistance of counsel, pointing out that Gannett had no right to counsel in bar discipline proceedings and that his due process claims were dependent on his allegations against his counsel. *See Matter of Griffith*, 440 Mass. 500, 507 (2003) (in bar discipline matters, the board's recommendation as to sanctions is given substantial deference).

Gannett appealed to a single justice of the Massachusetts SJC (Chief Justice Budd), who ordered disbarment.[1]  The full Court affirmed Chief Justice Budd's order finding that Gannett "was given adequate notice of the charged misconduct, an opportunity to present and challenge evidence, and to appeal," and noted that while his due process claims "have evolved," they ultimately are "rooted in the 'actions and inaction of counsel.'"  *In re Gannett*, 489 Mass. at 1010, citing *Matter of Eisenhauer*, 426 Mass. 448, 454, cert. denied, 524 U.S. 919 (1998).  The Court agreed with the single justice that the Board's factual findings were supported by substantial evidence and that Gannett had waived any challenge on appeal to her determination.

In considering whether disbarment "is markedly disparate from judgments in comparable cases," *see Matter of Finn*, 433 Mass. 418, 423 (2001), the SJC justices found that "[t]he usual sanction for misconduct of that type . . . engaging in conduct that involves dishonesty, fraud, deceit, or misrepresentation, . . . is disbarment or indefinite suspension."  *In re*

---

[1] Citing *Matter of Schoepfer*, 426 Mass. 183, 187 (1997), Chief Justice Budd noted that "[d]isbarment or indefinite suspension is the standard suspension for temporary or permanent misappropriation of funds." Dkt #2 at 7.  At the time of the decision in November of 2020, Gannett had not restored the $42,227.28 to his IOLTA account.

*Gannett*, 489 Mass. at 1011, citing *Matter of Hilson*, 448 Mass. 603, 618 (2007) (indefinite suspension for misuse of third-party funds).  The Court concluded that "[c]onsidering the misconduct, as well as the aggravating factors, the choice between disbarment and indefinite suspension is plain. We agree with the single justice that the respondent must be disbarred." *Id.* at 1012.

## DISCUSSION

This court's review of the SJC's order is deferential and confined to the issue of Gannett's right to practice in this court.  In that regard, I consider whether "the state proceeding complied with due process, [whether] there was adequate proof of misconduct, and [whether] imposing reciprocal discipline would not result in a grave injustice." *In re Bailey*, 450 F.3d 71, 73 (1st Cir. 2006) (per curiam), citing *Theard v. United States*, 354 U.S. 278, 282 (1957).  "[T]he state court's substantive findings ordinarily are entitled to a high degree of respect when this court is asked to impose reciprocal discipline." *In re Williams*, 398 F.3d 116, 118 (1st Cir. 2005).

Local Rule 83.6(2)(D) mandates the imposition of identical discipline for sanctioned counsel subject to four enumerated exceptions, at least one of which must "clearly appear[]" from the face of the record.  Those exceptions are:

> (1)that the procedure was so lacking in notice or opportunity to
> be heard as to constitute a deprivation of due process; (2) that
> there was such an infirmity of proof establishing the misconduct
> as to give rise to the clear conviction that this court could not,
> consistent with its duty, accept as final the other court's
> conclusion on that subject; (3) that the imposition of
> substantially similar discipline or the making of the same finding
> by this court would result in grave injustice; or (4) that the
> conduct at issue is deemed by the presiding judge to warrant
> substantially different disciplinary action, the presiding judge
> may enter such other orders as he or she deems appropriate
> under the circumstances.

"In all other respects, a final adjudication in another jurisdiction that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of any proceeding under this rule." *Id.*

Gannett raises the same arguments in this proceeding as he did before the SJC – that Attorney Greenberg's ineffective representation in the proceedings before the BBO committee violated his right to due process. These contentions were rejected by the BBO, Chief Justice Budd, and the full Court.  Significantly, Gannett does not challenge the evidence of his misconduct – that he misused trust funds when he converted the proceeds of a $42,227.28 check belonging to Lee Bank.  The record clearly indicates that he did so without Lee Bank's permission and over its express objection, and then he disbursed the funds to himself with knowledge that he had no

right to the funds.  In sum, none of Local Rule 83.6(2)(D)'s exceptions apply.[2]

ORDER

For the foregoing reasons, Richard W. Gannett is disbarred from practice at the bar of the United States District Court for the District of Massachusetts pursuant to Local Rule 83.6(2)(D).  Judgment of disbarment may be entered.

/s/ Richard G. Stearns
UNITED STATES DISTIRCT JUDGE

---

[2] Because there are no disputes of material fact concerning the underlying charges of misconduct and the legal claim of a violation of due process is based on a non-extant right to be represented by counsel in a bar disciplinary proceeding, the court sees no purpose to be served by a further hearing on the matter.